**Harold CARIE and Al Harper,
Appellants–Plaintiffs,**

**v.**

**PSI ENERGY, INC., Appellee–Defendant.**

**No. 83A01–9707–CV–229.**

Court of Appeals of Indiana.

April 23, 1998.

Rehearing Denied June 1, 1998.

Stephen L. Williams, Mann Law Firm, Terre Haute, Paul B. Ledford, Vincennes, for Appellants–Plaintiffs.

William W. Drummy, John C. Wall, Wilkinson Goeller Modesitt Wilkinson & Drummy, Terre Haute, Eric M. Cavanaugh, Cinergy Services, Inc., Plainfield, for Appellee–Defendant.

## OPINION

KIRSCH, Judge.

In this consolidated appeal, Harold Carie and Al Harper challenge the trial court's grant of summary judgment in favor of PSI Energy, Inc. Carie and Harper were employees of Blount, Inc., an independent contractor PSI hired to perform maintenance work at PSI's Cayuga Generating Station. They were injured while performing maintenance work on a piece of PSI's equipment known as an exhauster. Carie and Harper raise several issues for our review, the following of which are dispositive of this appeal:

I. Whether PSI's relationship with Blount was one of contractee/inde-

pendent contractor so as to render the general rule that a contractee is not liable for the negligence of its independent contractor applicable to PSI.

II. Whether Blount contracted with PSI to perform intrinsically dangerous work so as to subject PSI to liability under one of the exceptions to the general rule.

III. Whether the particular project which Blount employees were performing at the time of Carie and Harper's injuries carried with it the probability of injury unless due precaution was taken so as to subject PSI to liability under another one of the exceptions to the general rule.

We reverse.

## FACTS AND PROCEDURAL HISTORY

On August 8, 1989, PSI entered into a contract with Blount for maintenance services at PSI's generating stations. The contract provided that Blount "shall have the obligation to provide a safe working environment for its employees and [Blount] shall maintain its own safety standards. [Blount] shall ensure that its employees follow safe work practices." *Record* at 30. The contract also required Blount to comply with "all applicable laws, ordinances, rules and regulations, including provisions of the Occupational Safety and Health Act[,]" and to "abide by any and all rules PSI may have in effect or hereafter put into effect at the site of the Work pertaining to ... the handling of Equipment[1]...." *Record* at 30.

The Cayuga Generating Station generates electricity by means of pulverized coal. Once the coal is pulverized, it is moved into exhausters. An exhauster is a massive fan-like apparatus which contains eight blades, resembling a steamboat's paddle wheel. The exhausters distribute the coal to the boilers which generate electricity.

At one time, PSI performed its own maintenance on the exhausters. During this time,

PSI developed a fixture to make the exhauster maintenance more efficient. This fixture was the means for removing the 5,200–pound covers of the exhausters so that maintenance could be performed. The removal process involved bolting the fixture to the cover and detaching the cover from the exhauster by securing the fixture, with the attached cover, to a forklift. The forklift would then be operated to remove the cover from the exhauster. Because the fixture is not self-supporting, it would be placed in a position allowing for it to be tied off to an overhead structure. Until the tying off could be accomplished, the forklift was the only support for the fixture and attached cover.

PSI eventually began to employ contractors to perform the maintenance work and, in August of 1989, awarded the work to Blount. Timothy Weiss was a foreman for Blount and was in charge of the maintenance at the Cayuga Generating Station in September of 1991. Prior to PSI's awarding the work to Blount, Weiss had performed work at PSI, including removing the exhauster covers. A PSI employee told Weiss how to perform the cover removal procedure. *Supplemental Record* at 469. Weiss had performed the procedure several times and had experience in removing the cover from each one of the twelve exhausters. Weiss knew, and informed his maintenance crew who was working on the exhausters, that the fixture with the exhauster cover attached to it was not self-supporting. *Supplemental Record* at 433–34.

On September 5, 1991, Carie and Harper were a part of Weiss's crew performing maintenance work on Exhauster 1–A. The crew began the procedure of removing the cover from the exhauster. The fixture and the attached cover were secured to a forklift owned by PSI and operated by Kenneth Richmond, another Blount employee. Richmond backed the forklift up about four or five feet when it stalled.

The malfunctioning of a PSI forklift was typically reported to a PSI supervisor. Accordingly, when the forklift with which

---

**1.** "Equipment" is defined in the contract as "Collectively, all the tools, apparatus and equipment necessary to complete the Contract, includ-

ing necessary vehicles and facilities for transportation of materials and supplies furnished to [Blount] by PSI." *Record* at 28.

Weiss's crew was working stalled, Weiss told his people "to leave it alone, don't touch it, I'll go get—I'll go tell somebody to fix it," and Weiss left the scene. *Supplemental Record* at 440. PSI mechanics came to the scene and examined the forklift. The mechanics told Richmond what the problem was and instructed him on how to operate the forklift to avoid stalling. Richmond restarted the forklift and backed it up another eight to ten feet. He then set the fixture with the cover attached on the floor. He left the forks inserted into the fixture until another Blount employee approached in another forklift and could not pass by Richmond's forklift. Richmond had not been told, and did not otherwise know, that the fixture was not self-supporting.[2] Richmond then backed up his forklift, removing the forks from the fixture, leaving it free-standing. The fixture, with the attached exhauster cover, fell on Carie and Harper resulting in their serious injuries.

Carie and Harper filed separate complaints against PSI, each alleging that his injuries were the result of PSI's carelessness and negligence. The two cases were consolidated in the trial court. PSI filed a motion for summary judgment, contending that under the general rule of contractee nonliability, it owed no duty to the employees of an independent contractor and that it was not liable under any of the rule's exceptions. The trial court granted PSI's motion on the ground that PSI did not owe a duty to Carie and Harper. Carie and Harper appeal.

## DISCUSSION AND DECISION

The purpose of summary judgment is to end litigation about which there can be no

factual dispute and which may be determined as a matter of law. *Sizemore v. Arnold,* 647 N.E.2d 697, 698 (Ind.Ct.App.1995). When reviewing a decision on a summary judgment motion, this court applies the same standard as does the trial court. *Wickey v. Sparks,* 642 N.E.2d 262, 265 (Ind.Ct.App.1994), *trans. denied* (1995). Thus, we are not bound by the findings and conclusions entered by the trial court when ruling on a motion for summary judgment as we base our decision upon the Trial Rule 56(C) materials properly presented to the trial court. *Campbell v. Spade,* 617 N.E.2d 580, 582–83 (Ind.Ct.App.1993). Summary judgment shall be granted if the designated evidentiary matter demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Wickey,* 642 N.E.2d at 265. In determining whether summary judgment is appropriate, all facts and reasonable inferences must be construed against the moving party. *Wickey,* 642 N.E.2d at 265.

Carie and Harper's claim against PSI sounds in negligence. The tort of negligence consists of the following elements: 1) a duty owed to the plaintiff by the defendant; 2) a breach of that duty by the defendant; and 3) injury to the plaintiff proximately caused by that breach. *Id.* A defendant may obtain summary judgment in a negligence action by demonstrating that the undisputed material facts negate at least one element of the plaintiff's claim or that the claim is barred by an affirmative defense. *Goldsberry v. Grubbs,* 672 N.E.2d 475, 477 (Ind.Ct.App.1996).

■■■ The element at issue here is duty.[3] Generally, a contractee is not liable for the negligence of an independent contractor.

2. The designated evidence conflicts regarding whether Richmond was a member of Weiss's crew. This fact is not material, however, because it is undisputed that Richmond was unaware that the fixture was not self-supporting.

3. PSI contends that Carie and Harper have waived all of their arguments concerning duty because the substance of their arguments made on appeal were not included in either their contentions of negligence or in their designation of material issues of fact submitted to the trial court. To obtain a summary judgment, the moving party must establish not only the absence of genuine issues of material fact, but also its enti-

tlement to judgment as a matter of law. Ind.Trial Rule 56(C). The question of duty is generally a legal one. *Wickey,* 642 N.E.2d at 265. Thus, PSI, as the moving party, had the burden of establishing as a legal matter, not a factual matter, that it was entitled to judgment as a matter of law because it owed no duty to Carie and Harper. Whether PSI satisfied this burden is determined without regard to the existence of any genuine issues of material fact designated by Carie and Harper. Accordingly, Carie and Harper's failure to include any duty theories in their factual allegations does not result in waiver.

*Bagley v. Insight Communications Co., L.P.,* 658 N.E.2d 584, 587 (Ind.1995); *Prest–O–Lite Co. v. Skeel,* 182 Ind. 593, 597, 106 N.E. 365, 367 (1914). A duty will be imposed, however, if one of five exceptions to the general rule of contractee nonliability exists. Those exceptions are:

"(1) where the contract requires the performance of intrinsically dangerous work;

(2) where the principal is by law or contract charged with performing the specific duty;

(3) where the act will create a nuisance;

(4) where the act to be performed will probably cause injury to others unless due precaution is taken; and

(5) where the act to be performed is illegal."

*Bagley,* 658 N.E.2d at 586. These exceptions create non-delegable duties on the part of one hiring an independent contractor. *Id.* at 588.

## I. Relationship between PSI and Blount

For the general rule to apply, the relationship between PSI and Blount must be that of PSI as contractee and Blount as independent contractor. If, however, Blount was acting not as an independent contractor but as PSI's employee, then the general rule and its attendant exceptions do not apply, and PSI may be held vicariously liable for Blount's negligence.

The terms of the written contract between PSI and Blount designate Blount as an independent contractor. *Record* at 28 (Section 202.1). Nonetheless, Carie and Harper contend that this contractee/independent contractor relationship was destroyed because PSI retained control over the instrumentalities and procedures Blount used in the cover removal process. According to Carie and Harper, the destruction of this relationship renders the general rule of contractee nonliability inapplicable.

■ The essence of Carie and Harper's argument in this regard is that PSI, by its conduct, assumed control over the manner and means by which Blount was to perform the maintenance work on the exhausters.

Generally, the degree of control, for purposes of determining whether a contractee/independent contractor or an employer/employee relationship exists, is assessed in terms of the contract documents. *See, e.g., Cummings v. Hoosier Marine Properties, Inc.,* 173 Ind. App. 372, 379–81, 363 N.E.2d 1266, 1272–73 (1977), *trans. denied; Hale v. Peabody Coal Co.,* 168 Ind.App. 336, 340–41, 343 N.E.2d 316, 321 (1976); *Jones v. Indianapolis Power & Light Co.,* 158 Ind.App. 676, 683–84, 304 N.E.2d 337, 342–43 (1973), *trans. denied.* The contract is considered as a whole, not by isolated sentences or paragraphs. *Prest–O–Lite,* 182 Ind. at 597–98, 106 N.E. at 367.

■ The contract in the present case specifically provides that Blount was an independent contractor and that all of its personnel assigned to work under the contract were its employees. *Record* at 28 (Section 202.1). While Blount was contractually obligated to "abide by any and all rules PSI may have in effect ... at the site of the Work pertaining to ... safety," Blount was also contractually obligated to "provide a safe working environment for its employees[,]" to "maintain its own safety standards[,]" and to "ensure that its employees follow safe work practices." *Record* at 30 (Section 207.1). PSI had the contractual right to "deny access to or direct [Blount] to remove from the location of the Work ... any of the Contractor's personnel then working or scheduled to work under the Contract." *Record* at 34 (Section 211.1). There is nothing in the contract, however, that can be construed to confer any power on PSI to control Blount's work.

■ In addition to evaluating the contract documents, consideration is given to the conduct of the employing entity to determine whether it has assumed control over the contractor's work. *Cummings,* 173 Ind.App. at 380–81, 363 N.E.2d at 1272–73; *Jones,* 158 Ind.App. at 685, 304 N.E.2d at 343. "The control must be such as would enable the landowner to oversee the method of work employed. It must be a control which would under the common-law have given rise to the doctrine of respondeat superior." *Cummings,* 173 Ind.App. at 380, 363 N.E.2d at 1272. There is no evidence that PSI exer-

cised such control over Blount's work. While PSI gave Blount technical direction regarding using the fixture to remove the exhauster covers, such direction was given as an initial matter. Once PSI gave the initial directions, it did not have supervisory control over Blount in the performance of the procedure. Weiss was the experienced foreman who instructed and supervised Blount employees. While PSI had the decision-making authority as to whether exhauster component parts would be replaced, the responsibility for performing such replacement rested solely with Blount. We conclude that PSI and Blount's relationship was one of contractee and independent contractor.

Given this conclusion, the general rule of contractee nonliability would render PSI not liable for the negligence of Blount's employees which resulted in Carie and Harper's injuries. *See Bagley,* 658 N.E.2d at 587. If, however, one of the rule's exceptions apply, then PSI owed a duty to Carie and Harper which could not be delegated to Blount. *See id.* at 588 (exceptions are "specific, limited situations in which the associated duties are considered non-delegable" because of public policy concerns); *Perry v. Northern Indiana Pub. Serv. Co.,* 433 N.E.2d 44, 47 (Ind.Ct. App.1982) (exceptions may not be delegated to independent contractor), *trans. denied.*

## II. Exception One—Performance of Intrinsically Dangerous Work

■ Carie and Harper argue that PSI owed them a duty under the first exception to the general rule. This exception holds a contractee liable for the negligence of its independent contractor if the contract requires the performance of intrinsically dangerous work. *Cummings,* 173 Ind.App. at 385, 363 N.E.2d at 1274 (listing the five exceptions to general rule). Work is intrinsically dangerous if "the danger exists in the doing of the activity regardless of the method used." *Id.* at 386, 363 N.E.2d at 1275. The risk is "intrinsic to the accomplishment of the task and not simply a danger arising from a casual or collateral negligence of others." *Id.*

■ PSI is not liable to Carie and Harper under this exception for several reasons. First, the contract between PSI and Blount did not require the performance of intrinsically dangerous work. The contract defined the "Work" as "Generating Station Maintenance Services on a Contract basis." *Record* at 28 (Section 200.1.4). There is nothing intrinsically dangerous about generating station maintenance in and of itself. Nowhere in the contract provisions was Blount directed to use any specific method when performing its maintenance services. *Record* at 37–39. Absent any contractual requirements to perform intrinsically dangerous work, PSI is not liable for Carie and Harper's injuries under this exception. *See Hale,* 168 Ind. App. at 342, 343 N.E.2d at 322 (emphasizing that contract must require intrinsically dangerous work); *Jones,* 158 Ind.App. at 686, 304 N.E.2d at 344 (same).

Second, PSI is not liable under this exception because the accident was caused by the collateral negligence of others. *See Cummings,* 173 Ind.App. at 386, 363 N.E.2d at 1275 (negligent failure to shore and brace sewer trenches was collateral to risk created by digging trenches thus precluding liability against contractee); *Jones,* 158 Ind.App. at 686–87, 304 N.E.2d at 344 (fellow employees' manipulation of override circuitry made electric hoist dangerous, not operation of hoist car itself). The fixture with the attached cover fell because a Blount employee, who had not been told that the fixture would not support itself, removed the forklift supports.

■ Third and finally, PSI is not liable under this exception because proper precautions were not taken during the cover removal process. This concept has evolved into the following statement: "An instrumentality or undertaking is not intrinsically dangerous if the 'risk of injury involved in its use can be eliminated or significantly reduced by taking proper precautions.'" *Perry,* 433 N.E.2d at 47 (quoting *Hale,* 168 Ind.App. at 343, 343 N.E.2d at 322). The original source for the idea is *Denneau v. Indiana & Michigan Elec. Co.,* 150 Ind.App. 615, 277 N.E.2d 8 (1971), in which this court held that the intrinsically dangerous work exception was not applicable because the evidence "reinforce[d] the inference that if proper precautions were taken there would be little risk of

injury." *Id.* at 620, 277 N.E.2d at 12. The proper inquiry is whether the taking of proper precautions would significantly reduce or eliminate the risk of injury.

Here, the fixture was used to remove the cover from the exhauster, and the fixture with the attached cover was set on the floor. The only means of support, the forklift, was then removed from the fixture despite its non-self-supporting nature and despite Weiss's instructions to his crew members not to disturb or move the forklift. If the forklift had not been pulled out of the fixture, the accident would not have happened. *Supplemental Record* at 476.

For all three of these reasons, PSI is not liable for Carie and Harper's injuries under the intrinsically dangerous work exception.

### III. Exception Four—Probability of Injury Absent Due Precaution

Carie and Harper also argue that PSI owed them a duty under the fourth exception to the general rule of nonliability. This exception holds a contractee liable for the negligence of an independent contractor "where the act to be performed will probably cause injury to others unless due precaution is taken." *Bagley,* 658 N.E.2d at 586. Among the various explanations offered for this exception, a recurrent theme in the appellate decisions is that the risk of harm must be peculiar to the specific work undertaken by the independent contractor. *See id.* at 588 ("peculiar risk involved in the work"); *Curl v. Bethlehem Steel Corp.,* 181 Ind.App. 132, 134, 390 N.E.2d 709, 711 (1979) ("risk of harm which is peculiar to the specific activity"), *overruled on other grounds, Douglass v. Irvin,* 549 N.E.2d 368, 371 (Ind.1990); *Cummings,* 173 Ind.App. at 387, 363 N.E.2d at 1275 (noting description in PROSSER ON THE LAW OF TORTS § 71, at 473 (4th ed. 1971) as "'peculiar' character of the risk").

■ This classification of risk is more commonly referred to as the peculiar risk doctrine. *See generally* 7 AM.JUR.PROOF OF FACTS 3D 477 § 4 (1990). Although Indiana courts have not specifically recognized or defined the doctrine, this court has explained its essence as follows:

"the focus of the [due precaution] exception ... is the character of the risk of harm which is peculiar to the specific activity being undertaken. It is only where the methods to be employed in doing the work or the particular surroundings in which the work is to be done are such as to present risks 'recognizable in advance as calling for definite precautions' that the contractee may be held answerable for the failure to take such precautions."

*Curl,* 181 Ind.App. at 134, 390 N.E.2d at 711 (quoting *Cummings,* 173 Ind.App. at 387, 363 N.E.2d at 1275). Thus, in determining whether the due precaution exception applies, the focus is on the "specific activity being undertaken" by the contractor and whether such activity involves a peculiar risk. In contrast, the intrinsically dangerous work exception focuses on the nature of the work generally, rather than on the specific activity undertaken. *See Hale,* 168 Ind.App. at 342, 343 N.E.2d at 322 ("performance of work intrinsically dangerous"); *Stewart v. Huff,* 105 Ind.App. 447, 455–56, 14 N.E.2d 322, 326 (1938) ("inherent danger in the work contracted to be done."). *See generally* 7 AM. JUR.PROOF OF FACTS 3D 477 § 4 (1990) (discussing distinction between inherent danger and peculiar risk).

In addition to the different areas of focus, specific activity versus general work, the peculiar risk doctrine, as it is embodied in the due precaution exception, and the intrinsic danger exception may also be distinguished by considering the role of precautionary measures. In the intrinsic danger exception, the nature of the work is such that the risk will never be completely eliminated by precautionary measures. The rationale of the exception sounds in "strict liability as would exist for example in blasting." *Cummings,* 173 Ind.App. at 386, 363 N.E.2d at 1275. Thus, even with the exercise of all due reasonable care, a risk of injury will always be present simply due to the nature of the work. With the peculiar risk doctrine, on the other hand, the use of proper precautions for a specific activity would eliminate the risk.

Foreseeability is required in both the due precaution exception and the intrinsic danger exception. *Denneau,* 150 Ind.App. at 621,

277 N.E.2d at 12. In the due precaution context, "foreseeability is an essential element of the exception and liability is established only when, at the time of contracting, the employer should have foreseen that injury to others was 'likely to happen.'" *Red Roof Inns, Inc. v. Purvis*, 691 N.E.2d 1341, 1345–46 (Ind.Ct.App.1998) (quoting *Jones*, 158 Ind.App. at 691, 304 N.E.2d at 346). *See also Bagley*, 658 N.E.2d at 588 (noting that essence of due precaution exception is "the foreseeability of the peculiar risk involved in the work and of the need for special precautions."). The foreseeability requirement, however, is not without limitation. In *Red Roof*, this court considered the degree of foreseeability required of the employer of an independent contractor whose employee fell during a roofing project. In holding that the employer of the independent contractor was not subject to liability under the due precaution exception, we explained:

> "The employer of an independent contractor may always anticipate that, if the contractor is negligent toward third persons, some harm to those persons may result. *See* RESTATEMENT [ (SECOND) OF TORTS] § 413 cmt. b, at 385. Thus, Red Roof could have foreseen the *possibility* that Purvis could be injured from a fall if no safety precautions were in place. More than the *possibility* of harm, however, is required; the plaintiff must show a *probability* of such harm."

*Red Roof*, 691 N.E.2d at 1346.

In reaching our conclusion in *Red Roof*, this court noted the approach of the Restatement (Second) of Torts to the peculiar risk question. The Restatement recognizes a peculiar risk as one which the employer should recognize as "likely to arise" either in the course of the ordinary and usual method of doing the work, or in the "particular method which the employer knows that the contractor will adopt." RESTATEMENT (SECOND) OF TORTS § 416 cmt. e, at 397. The Restatement illustrates this concept as follows:

> "3. A employs an independent contractor to lay a concrete foundation for pavement in the public street. As A knows when he employs the contractor, the customary method of doing such work involves dumping piles of gravel into the street for use in mixing concrete, although it is possible to avoid this by hauling the gravel in small quantities as needed. A also knows that such piles of gravel will involve a peculiar risk to automobile drivers using the street at night unless red lanterns are placed upon them as a warning. The contractor fails to take this precaution. B, driving an automobile down the street at night, runs into a pile of gravel and is injured. A is subject to liability to B."

RESTATEMENT (SECOND) OF TORTS § 416 cmt. e, illus. 3, at 397–98.

■ Substituting the proper parties into the above example results in the following: PSI employs Blount to perform maintenance services at the Cayuga Generating Station. As PSI knows when it employs Blount, the maintenance activities will involve removal of the exhauster covers and that the method for performing such removal will involve the use of the non-self-supporting fixture. PSI also knows that use of the fixture will involve a peculiar risk to those in its vicinity unless the fixture is continuously supported. Blount fails to take this precaution. Carie and Harper, two workers in the vicinity of the fixture as the cover removal process is being performed, are injured when the fixture falls on them. PSI is subject to liability to Carie and Harper.

We emphasize that the determination to be made is not whether the general maintenance services Blount agreed to perform involved a peculiar risk. The question, rather, is whether the use of the non-self-supporting fixture to remove an exhauster cover would make injury "likely to happen" unless precautionary measures were taken. The answer is yes. The fixture was not self-supporting. Unless precautionary measures were taken in the form of providing continuous support to the fixture, either by leaving it attached to the forklift or by tying it off to an overhead structure, the fixture would fall. And, when a fixture with a 5,200–pound exhauster cover attached falls in an indoor environment populated by several workers, it is likely that the fixture will cause injury. Thus, it was foreseeable to PSI at the time of

contracting that if the fixture was left unsupported, it would fall and likely cause injury. For this reason, the exhauster cover removal process in which the fixture is used, and its attendant foreseeable risk, bring PSI within the due precaution exception to the general rule.[4] Thus, the trial court's grant of summary judgment on the basis that PSI owed Carie and Harper no duty was erroneous.

We emphasize that duty was the only issue presented in PSI's motion for summary judgment. *Record* at 258. The elements of breach and causation were not addressed.[5] Whether PSI was entitled to summary judgment on those elements remains an open question.

Reversed.

SULLIVAN, J., concurs.

FRIEDLANDER, J., dissents with separate opinion.

FRIEDLANDER, Judge, dissenting.

I believe that the trial court was correct in entering summary judgment in favor of PSI and respectfully dissent from the majority's conclusion to the contrary.

The majority concludes that PSI owed a duty to the appellants under the due precaution exception to the general rule providing that a contractee owes no duty to an independent contractor. In my view, that exception does not apply here.

Our supreme court has explained the due precaution exception as follows:

> The essence of this exception is the foreseeability of the peculiar risk involved in the work and of the need for special precautions. The exception applies where, at the time of the making of the contract, a principal should have foreseen that the performance of the work or the conditions under which it was to be performed would, absent precautionary measures, probably cause injury.
>
> Application of this fourth exception to the plaintiff's claim thus requires an examination of whether, at the time [a party] was employed as an independent contractor, there existed a peculiar risk which was reasonably foreseeable and which recognizably called for precautionary measures.

*Bagley v. Insight Communications Co., L.P.,* 658 N.E.2d 584, 588 (Ind.1995) (citations omitted).

I depart from the majority's analysis with respect to the factual similarity that must exist between the danger which must have been foreseen and the incident that actually occurred. I believe the danger that the contractee must foresee in order to fit within the fourth exception must be substantially similar to the accident that produced the complained-of injury. I note in this regard the particularity with which the court in *Jones v. Indianapolis Power & Light Co.,* 158 Ind. App. 676, 304 N.E.2d 337, 346 (1973) recited the facts of the incident in affirming summary judgment in favor of the defendant:

> There was no evidence that, at the time Ipalco contracted with Combustion, Ipalco could foresee or should have foreseen that the limit control switch atop a man and materials hoist operated by an independent contractor for exclusive use of its employees would become clogged with ice and snow causing the hoist to stick-and that employees of such independent contractor would undertake to manipulate the

---

4. We are aware of no Indiana cases that have found the due precaution exception applicable to the employer of an independent contractor. The cases that have declined to apply the exception have all involved allegations that a general type of work involves a peculiar risk. *See, e.g., Bagley,* 658 N.E.2d 584 (trenching); *Red Roof,* (roofing); *Cummings,* 173 Ind.App. 372, 363 N.E.2d 1266 (trenching). None of these cases involved a specialized procedure or instrumentality used in connection with a particular project as in the present case. For this reason, those cases are distinguishable from the case at bar.

5. PSI included a brief reference to proximate cause in connection with its argument that it satisfied any duty it had as a landowner to warn of the dangers associated with the fixture. *Record* at 270. This is not sufficient to have put proximate cause at issue before the trial court so as to give Carie and Harper the opportunity to respond to the issue and designate any evidence they may have had with respect thereto. Despite PSI's inclusion in its appellate brief of a section addressing proximate cause, we limit our decision to the duty issue.

hoist circuitry so as to cause death or injury.

The undisputed facts of the accident in the instant case are that Carrie and Harper were injured as they were working behind the front cover taking the blades off of a fan. Their injuries were caused when the front cover fell. The front cover fell when an employee of the independent contractor moved a fork lift that was supporting the cover and an attached jig, leaving the cover unsupported. Because the facts are undisputed, in the context of the due precaution exception, the issue is whether PSI should have foreseen that the performance of maintenance and repair work on the exhausters in its power plant would probably result in this particular kind of injury-producing incident unless due precaution was exercised. *See Bagley v. Insight Communications Co., L.P.*, 658 N.E.2d 584.

In summary, consistent with *Jones* and *Bagley*, in order to determine whether the requisite foreseeability was present in the instant case, we must ask the following question: At the time of the signing of the contract, could PSI have foreseen that a forklift would fail while it was supporting a jig and front cover, and that a Blount employee would move the forklift, leaving the front cover unsupported, which would then fall and injure someone? In my view, this question must be answered in the negative. I do not believe that this type of occurrence was foreseeable at the time of the signing of the contract. I would affirm the grant of summary judgment in favor of PSI.