Julie Moore WALKER and Scot Moore, Individually and as Co–Personal Representatives of the Estate of Christopher Scot Moore, Deceased, Appellants–Plaintiffs,

v.

James Thad MARTIN, Individually and d/b/a JTM Express,[1] and Timothy LaFountaine, Individually and d/b/a LaFountaine Logging, Appellees–Defendants.

No. 34A02–0711–CV–959.

Court of Appeals of Indiana.

May 30, 2008.

Rehearing Denied Aug. 5, 2008.

---

1. James Thad Martin, individually and d/b/a JTM Express, is not seeking relief on appeal. Pursuant to Indiana Appellate Rule 17(A), however, a party of record in the trial court is a party on appeal.

Landyn K. Harmon, Richard S. Eynon, Eynon Law Group, P.C., Columbus, IN, Attorneys for Appellants.

Mark A. Metzger, Theodore G. Hammond, Due Doyle Fanning & Metzger, LLP, Indianapolis, IN, Attorneys for Appellee, LaFountaine.

## OPINION

KIRSCH, Judge.

Julie Moore Walker and Scot Moore, individually and as co-representatives of the Estate of Christopher Scot Moore, Deceased ("Christopher") (collectively "the Moores") appeal the trial court's grant of summary judgment in favor of Timothy LaFountaine, individually and d/b/a La-Fountaine Logging ("LaFountaine"). The Moores raise the following restated issues:

I. Whether the trial court erred in determining as a matter of law that truck driver, James Thad Martin ("Martin"), was an independent contractor rather than an employee of LaFountaine;

II. Whether LaFountaine owed a non-delegable duty to Christopher

and was thus vicariously liable under one of the exceptions to the general rule that a principal is not liable for the negligence of an independent contractor; and

III. Whether a joint venture existed between LaFountaine and Martin.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On December 9, 2003, Martin was driving a tractor-trailer southbound on U.S. Highway 31 at the intersection with State Road 26 in Howard County when he disregarded a red traffic signal. This caused the tractor-trailer to collide with the car in which Christopher was a passenger and resulted in his death. At the time of the collision, Martin was hauling logs, which had been purchased by G.R. Wood, Inc., a/k/a American Timbex ("Wood") from La-Fountaine, to Wood's plant in Mooresville, Indiana.

At the time of the collision, LaFountaine was a company that was in the business of procuring and selling timber logs. Wood was in the business of producing veneer wood, which it sold to manufacturers of furniture and other products.[2] Martin was a truck driver who had operated under the business name of JTM Express since 1994. On September 16, 2003, LaFountaine and Wood entered into an agreement in which Wood agreed to purchase forty-eight walnut logs and eight oak logs from LaFountaine for $31,500.00. On December 9, 2003, Martin loaded the logs onto his trailer at LaFountaine's site in Silver Lake, Indiana.

2. G.R. Wood, Inc., a/k/a American Timbex was an original party before the trial court, but summary judgment was previously granted in its favor and such grant was affirmed on appeal in an unpublished opinion. *Walker v. Martin*, No. 34A05–0608–CV–424, 862 N.E.2d 330 (Ind.Ct.App. Feb. 27, 2007), *trans. denied.*

Starting in 1999 or 2000, Martin hauled logs for LaFountaine "on and off for three, three-and-a-half years," but began to work more frequently for him in March 2003, and Martin was LaFountaine's primary log hauler in 2003. *Appellant's App.* at 166–67. During 2003, Martin also had hauled logs for Wood and other parties. Although Martin considered himself to be an independent contractor, he had painted LaFountaine's company logo on the side of his truck cab. Martin owned both the semi-tractor and trailer used to haul the logs, as well as the straps used to secure the logs and all of the tools on the truck. Additionally, he paid for his own fuel, insurance, and maintenance. Martin determined the route taken to transport the logs and the manner in which the logs were loaded and secured on the trailer.

At the time of the accident, Martin had a commercial driver's license and had procured a log farm exemption license plate for his semi-tractor and trailer. This license plate did not require that he purchase the $750,000.00 minimum interstate trucking insurance that the federal government required. Martin set his own rate for hauling logs and was paid by the load rather than by the hour. When he hauled logs previously for Wood, he was either paid directly by Wood or by LaFountaine.

As a result of the accident, the Moores filed a wrongful death suit against Martin, LaFountaine, and Wood on September 9, 2004. On January 9, 2007, LaFountaine filed a motion for summary judgment, claiming that it was not an employer of Martin or involved in a joint venture with him. Additionally, it contended that Martin was an independent contractor and that LaFountaine could not be held liable for his acts. The trial court granted LaFountaine's summary judgment motion on July 30, 2007. The Moores now appeal. Additional facts will be added as necessary.

## DISCUSSION AND DECISION

### I. Standard of Review

When reviewing a grant or denial of summary judgment, we apply the same standard as the trial court: summary judgment is only appropriate when the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Jacobs v. Hilliard,* 829 N.E.2d 629, 632 (Ind. Ct.App.2005), *trans. denied.* On appeal, we consider all of the designated evidence in the light most favorable to the nonmoving party. *Walton v. First Am. Title Ins. Co.,* 844 N.E.2d 143, 146 (Ind.Ct.App. 2006), *trans. denied.* The trial court's order granting a motion for summary judgment is cloaked with a presumption of validity, and a party appealing from a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous. *Am. Home Assurance Co. v. Allen,* 814 N.E.2d 662, 666 (Ind.Ct.App.2004), *trans. dismissed* (2005). The entry of specific findings and conclusions offer insight into the reasons for the trial court's decision and facilitate appellate review, but are not binding on this court. *Troxel Equip. Co. v. Limberlost Bancshares,* 833 N.E.2d 36, 40 (Ind.Ct.App.2005), *trans. denied.*

### II. Independent Contractor

The Moores argue that the trial court erred when it granted summary judgment in favor of LaFountaine and determined that Martin was an independent contractor and not an employee of LaFountaine. They specifically contend that the trial court erred because it resolved disputed issues of fact in its grant of summary judgment and determination of this issue. Additionally, the Moores assert that the trial court improperly weighed the evi-

dence when it determined that Martin was an independent contractor.

■ Martin's employment status is the focal point of our analysis because of Indiana's "long-standing general rule ... that a principal is not liable for the negligence of an independent contractor." *Bagley v. Insight Commc'n Co., L.P.*, 658 N.E.2d 584, 586 (Ind.1995). Whether one acts as an employee or an independent contractor is generally a question for the finder of fact. *Mortgage Consultants, Inc. v. Mahaney*, 655 N.E.2d 493, 496 (Ind. 1995). However, if the significant underlying facts are undisputed, the court may properly determine a worker's classification as a matter of law. *Moberly v. Day*, 757 N.E.2d 1007, 1009 (Ind.2001).

■ Our Supreme Court has stated that when determining whether one is an employee or an independent contractor, we apply the following ten-factor analysis described in the Restatement (Second) of Agency § 220 (1958) to distinguish employees from independent contractors:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*Moberly*, 757 N.E.2d at 1010 (quoting Restatement (Second) of Agency § 220(2)). All of the above circumstances are considered in our analysis, and no single factor is dispositive. *Id.* However, although not dispositive, "extent of control" is the single most important factor in determining the existence of an employer-employee relationship. *Wishard Mem'l Hosp. v. Kerr*, 846 N.E.2d 1083, 1090 (Ind.Ct.App.2006).

### A. Extent of Control

■ An employee/servant is one "employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." Restatement (Second) of Agency § 220(1). Conversely, an independent contractor generally controls the method and details of his task and is answerable to the principal as to results only. *Wishard Mem'l Hosp.*, 846 N.E.2d at 1090.

Here, the undisputed evidence shows that Martin alone controlled the loading and driving of his semi-tractor and trailer. *Appellant's App.* at 97. He testified in his deposition that he was in charge of loading his trailer and decided how it was to be loaded. *Id.* He also decided what route to take when delivering logs, and there were no restrictions on how he was to get to the location. *Id.* Additionally, LaFountaine stated that Martin picked his own routes when he hauled logs for LaFountaine. *Id.* at 174. The designated

evidence establishes that, except for being told where to pick up and where to deliver the logs, all of the details of how the job was to be done were left to Martin's discretion. LaFountaine did not control either the method or the means of how Martin conducted his deliveries.

### B. Occupation or Business of Employee

The second factor considers whether or not the one employed is engaged in a distinct business or occupation. *Moberly*, 757 N.E.2d at 1010. The evidence demonstrated that Martin worked as a self-employed truck driver hauling logs for companies and individuals under the name JTM Express. He testified in his deposition that, during 2003, he hauled logs for both LaFountaine and Wood, as well as for others. *Appellant's App.* at 96. Although he had painted LaFountaine's logo on the side of his truck, he stated that he had done so to give LaFountaine "some free publicity" and to show his appreciation to LaFountaine for giving him so much business. *Id.* at 221. Martin never got LaFountaine's permission to place the logo on his truck, and LaFountaine testified that, as soon as he saw it, he told Martin to remove the logo. *Id.* at 95, 167–68. The evidence demonstrated that Martin was engaged in his own hauling business and did not work exclusively for LaFountaine. Therefore, this factor also weighs in favor of Martin as an independent contractor.

### C. Kind of Occupation

The third factor focuses on whether the kind of occupation involved consists of work usually done under the direction of an employer or by a specialist without supervision. *Moberly*, 757 N.E.2d at 1010. As Martin's deposition testimony indicated, he was not supervised in the loading, transporting, and delivering of logs. *Ap-*

*pellant's App.* at 91, 97. Neither Wood nor LaFountaine was in the business of hauling logs, and they relied on others like Martin to do this work. *Id.* at 73, 98. Additionally, the evidence established that other individuals in the locality were engaged in the business of hauling logs as specialists because after the accident occurred, another company was hired to pick up the logs Martin had been hauling and haul them. *Id.* at 222. Therefore, this factor weighs in favor of Martin being an independent contractor.

### D. Skill Required

■ The fourth factor considers the skill required by the particular occupation at issue. *Moberly*, 757 N.E.2d at 1010. Unskilled labor is usually performed by employees, while skilled labor is often performed by independent contractors. *Howard v. U.S. Signcrafters*, 811 N.E.2d 479, 483 (Ind.Ct.App.2004). Here, the evidence showed that Martin had a commercial driver's license and had been in the career of driving trucks and hauling things since 1987. *Appellant's App.* at 87. In order to keep his commercial driver's license, Martin was required to undergo drug screenings and Department of Transportation physicals. *Id.* at 88, 213. Martin's actions as an interstate truck driver were regulated by the Federal Motor Carrier Safety Regulations ("FMCSR"). Specifically, 49 C.F.R. § 390.3 states that all persons who operate a commercial motor vehicle, their employees, and their drivers shall be knowledgeable of and comply with the FMCSR. A driver of a commercial motor vehicle must be qualified by meeting several criteria before being permitted to drive a commercial motor vehicle. *See* 49 C.F.R. § 391.11. This factor is also in favor of Martin being an independent contractor.

### E. Supplier of Equipment, Tools, and Work Location

This factor is a consideration of whether the employer or the worker supplied the instrumentalities, tools, and place of work. *Moberly*, 757 N.E.2d at 1010. "[I]t is particularly significant if an employer provides tools or instrumentalities of substantial value, and the same would presumably be true if the workman is the provider." *Id.* at 1012. Here, Martin owned both the semi-tractor and trailer used to haul the logs, as well as the straps used to secure the logs. *Appellant's App.* at 95, 98–99. Martin also paid for any required maintenance on his tractor-trailer, fuel used, and insurance. *Id.* at 95–96. Although LaFountaine owned the front-loader used to load the logs on the trailer, the evidence still favors the conclusion that Martin was an independent contractor.

### F. Length of Employment

"[A] long-term relationship can indicate employee status ... [especially] 'employment over a considerable period of time with regular hours.'" *Moberly*, 757 N.E.2d at 1012 (emphasis in original) (quoting Restatement (Second) of Agency § 220(2)). Additionally, an employee is "'one who performs continuous service for another.'" *Id.* Here, Martin had been hauling logs for LaFountaine "on and off" for approximately three-and-a-half years, but began to work more frequently for LaFountaine in March 2003. *Appellant's App.* at 166–67. Martin was LaFountaine's primary log hauler in 2003, but also hauled logs for Wood and other parties. *Id.* at 96. Further, Martin was free to haul logs for any party he wished. *Id.* at 97. Martin's hours were not regular and his service for LaFountaine was not continuous. Therefore, this factor weighs in favor of Martin being an independent contractor.

### G. Method of Payment

Sporadic payments in lump sum amounts for each job performed, instead of payments by the hour or on a weekly basis are more typical of an independent contractor than an employee. *Moberly*, 757 N.E.2d at 1012. Martin was not paid on an hourly basis like an employee; instead he was paid by the load based on the number of miles he traveled or per board feet of wood he hauled. *Appellant's App.* at 212. Additionally, the designated evidence showed that LaFountaine paid Martin through a series of checks during the time period of August through the time of the accident. These checks were issued almost weekly during this time period and were for varying amounts with the "trucking logs" written in the memo line. *Id.* at 256–59. This factor is in favor of Martin being an independent contractor.

### H. Regular Business of Employer

This factor considers whether or not the work at issue is a part of the regular business of the employer. *Moberly*, 757 N.E.2d at 1010. LaFountaine was a company in the business of procuring and selling timber logs. LaFountaine was not in the business of hauling logs, although that was a necessary part of his business of selling logs. He did not earn a profit from the transportation of the logs. *Appellant's App.* at 101. Martin was engaged in the business of hauling logs and performed these services for LaFountaine, Wood, and others. This factor weighs in favor of Martin having the status of independent contractor.

### I. Belief of the Parties

This factor is the consideration of whether or not the parties believe they are creating the relationship of employer and employee. *Moberly*, 757 N.E.2d at

1010. " 'It is not determinative that the parties believe or disbelieve that the relation of master and servant exists, except insofar as such belief indicates an assumption of control by the one *and* submission to control by the other.' " *Id.* at 1012–13 (emphasis added) (quoting Restatement (Second) of Agency § 220(2), cmt. m). Martin's deposition testimony indicated that he believed that he was an independent contractor. *Appellant's App.* at 93. Although Martin had painted the LaFountaine logo on the side of his truck, he stated that he had done so as "free publicity" and to show his appreciation to LaFountaine for giving him so much business. *Id.* at 221. The evidence demonstrates that LaFountaine did not assume control over Martin in the loading, transporting, or delivering of logs. LaFountaine's deposition testimony indicates that he did not have control over how Martin loaded the logs, how the logs were transported, or what route Martin traveled. *Id.* at 174. This factor weighs in favor of Martin being an independent contractor.

### J. Whether the Principal is in Business

The evidence showed that LaFountaine was a business engaged in the procuring and selling of timber logs. Therefore, this lone factor weighs in favor of employee status for Martin.

### K. Totality of Factors

In sum, when considering all of the factors from *Moberly*, nine of the ten factors weigh in favor of Martin's status as an independent contractor. Therefore, the undisputed facts set forth in the designated evidence support the trial court's conclusion as a matter of law that Martin was an independent contractor at the time of the accident.

## III. Exceptions to Rule

■■ The long-standing general rule is that a principal is not liable for the negligence of an independent contractor. *Selby v. N. Ind. Pub. Serv. Co.,* 851 N.E.2d 333, 337 (Ind.Ct.App.2006), *trans. denied; Kahrs v. Conley,* 729 N.E.2d 191, 195 (Ind. Ct.App.2000), *trans. denied.* Due to public policy concerns, which seek to limit a principal's ability to avoid responsibility for some activities by hiring independent contractors, Indiana courts, however, have recognized the following five exceptions to the general rule:

(1) where the contract requires the performance of intrinsically dangerous work;

(2) where the principal is by law or contract charged with performing the specific duty;

(3) where the act will create a nuisance;

(4) where the act to be performed will probably cause injury to others unless due precaution is taken; and

(5) where the act to be performed is illegal.

*Selby,* 851 N.E.2d at 337. The duties associated with these five exceptions are considered non-delegable, and the principal is liable for the negligence of the independent contractor because the responsibilities are "deemed 'so important to the community' that the principal should not be permitted to transfer those duties to another." *Id.* (quoting *Daisy v. Roach,* 811 N.E.2d 862, 864 (Ind.Ct.App.2004)). The Moores argue that even if Martin was an independent contractor of LaFountaine, LaFountaine was still liable because Martin's conduct falls under each of the above-listed exceptions.

### A. Intrinsically Dangerous Work

■ The Moores contend that Martin was performing intrinsically dangerous work at the time the accident occurred.

They claim that, although hauling heavy loads such as steel has previously been found not to be intrinsically dangerous work under this exception, *Inland Steel v. Pequignot,* 608 N.E.2d 1378, 1384 (Ind.Ct. App.1993), *trans. denied,* the circumstances under which Martin was hauling logs in the present case (improperly plated semi-tractor and trailer, defective brakes, no Federal Motor Carrier or Department of Transportation operating authority) made the work intrinsically dangerous.

 This exception holds the principal liable for the negligence of the independent contractor if the contract requires the performance of intrinsically dangerous work. "Work is intrinsically dangerous if the risk of injury involved cannot be eliminated or significantly reduced by taking proper precautions." *Shell Oil Co. v. Meyer,* 705 N.E.2d 962, 978 (Ind.1998). The risk is " 'intrinsic to the accomplishment of the task and not simply a danger arising from a casual or collateral negligence of others.' " *Carie v. PSI Energy, Inc.,* 694 N.E.2d 729, 734 (Ind.Ct.App.1998), *trans. granted on other grounds* (1999).

In *Carie,* this court found that the contracted work in that case, maintenance work on exhausters at PSI's generating stations, was not intrinsically dangerous for three reasons. *Id.* at 734–35. First, the contract did not require the performance of intrinsically dangerous work. *Id.* at 734. Second, the accident was caused by the collateral negligence of others. *Id.* Third, proper precautions were not taken during the cover removal process, and if they had been, the accident would not have occurred. *Id.* at 734–35.

Similarly, in the present case, the contract between LaFountaine and Martin did not require the performance of intrinsically dangerous work. A panel of this court has held that there is nothing intrinsically dangerous about hauling heavy loads. *See Inland Steel,* 608 N.E.2d at 1384. The accident here was caused by the collateral negligence of others as the accident occurred because Martin disregarded a traffic signal. Additionally, proper precautions were not taken because he disregarded the traffic light and was operating with faulty brakes. "The proper inquiry is whether the taking of proper precautions would significantly reduce or eliminate the risk of injury." *Id.* at 735. Here, had Martin properly stopped at the traffic signal and appropriately maintained his brakes, the accident would not have occurred. Therefore, LaFountaine is not liable under this exception.

### B. Specific Duty by Law or Contract

 The Moores claim that LaFountaine's contract with Wood imposed a specific duty of care, and therefore, LaFountaine should be held liable for Martin's actions. Specifically, they rely on the paragraph, which states: "The undersigned agrees that he will furnish the equipment and pay all employees assisting in the delivery of said lumber (logs) and that all persons in such work shall be subject to his sole exclusive control." *Appellant's App.* at 155. The Moores argue that this paragraph creates an ambiguity as to whether Wood assumed control of the transport of the logs or whether LaFountaine did so.

 When interpreting a written contract, it is the court's duty to ascertain the intent of the parties at the time the contract was executed as disclosed by the language used to express their rights and duties. *Merrill v. Knauf Fiber Glass GmbH,* 771 N.E.2d 1258, 1269 (Ind.Ct.App. 2002), *trans. denied.* We look to the contract as a whole by examining all of its provisions to determine whether a party is charged with a duty of care under a con-

tract. *Id.* Moreover, the assumption of duty by contract exception to the general rule of non-liability is not triggered merely because a contractor may have a right to inspect and test the work, approve the work, and/or supervise employees of the independent contractor or even by requiring the contractor to follow company rules. *Armstrong v. Cerestar USA, Inc.,* 775 N.E.2d 360, 371 (Ind.Ct.App.2002), *trans. denied* (2003).

In examining the one-page contract between Wood and LaFountaine, there is no indication that LaFountaine intended to assume a specific duty as to Christopher, travelers on the public roadway, or even a general duty of care regarding the hauling of logs. The agreement does not define any duty of care or mention the assumption of any specific duty by LaFountaine. Therefore, the Moores have failed to show that this exception to the general rule of non-liability applies.

### C. Act Will Create a Nuisance

 The Moores allege that the agreement between Wood and LaFountaine required the performance of an act that would create a nuisance. The key requirement of this exception is that the act at issue was of a type that *will* create a nuisance. *Becker v. Kreilein,* 770 N.E.2d 315, 318 (Ind.2002). IC 32–30–6–6 states, "Whatever is: (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property; so as to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action."

The agreement between Wood and LaFountaine to haul logs, by itself, did not create a nuisance. The designated evidence did not establish that the act of hauling logs was of the type that *will* create a nuisance. Therefore, this excep-

tion to independent contractor liability does not apply.

### D. Act To Be Performed Will Cause Injury Unless Due Precaution Taken

 The Moores claim that this exception applies to the present case because, although there may be no peculiar risk to hauling logs using due care, the conditions under which the act was performed here caused the act to fall into this exception. This exception makes an employer liable for the negligence of an independent contractor where the act to be performed will probably cause injury to others unless due precaution is taken. *Carie v. PSI Energy, Inc.,* 715 N.E.2d 853, 856 (Ind.1999). For this exception to apply, it must be established that the principal, at the time of the contract, should have foreseen that the performance of the work or the conditions under which it was to be performed would, absent precautionary measures, probably cause injury. *Merrill,* 771 N.E.2d at 1267. "The danger that the principal must foresee must be substantially similar to the accident that produced the injury." *Id.* More than a mere possibility of harm is required; the defendant should have foreseen the probability of such harm. *Id.* Thus, application of this exception requires an examination of whether, at the time an individual was employed as an independent contractor, there existed a peculiar risk which was reasonably foreseeable and which recognizably called for precautionary measures. *Id.*

The designated evidence did not establish that LaFountaine had any knowledge of any alleged mechanical problems with Martin's semi-tractor or trailer, his driving record, or any alleged non-compliance with interstate trucking laws and regulations. Additionally, there was no showing that

LaFountaine could have reasonably foreseen that Martin would negligently disobey a traffic signal and cause an accident. While it may be possible that the act of hauling logs may cause injury unless certain precautions are taken, we cannot say that the act in and of itself establishes that injury will *probably* occur. Therefore, this exception does not apply.

### E. Illegal Activities

 The Moores argues that Martin engaged in an illegal act because he did not have the proper license plates on his tractor-trailer as he had improperly obtained a log farm exemption license plate. They contend that LaFountaine should have been on notice of this illegality since Martin had been hauling logs for the company off and on for three years. They also claim that any reliance on *Inland Steel v. Pequignot*, 608 N.E.2d 1378 (Ind.Ct.App. 1993), is misplaced because, although the illegalities in that case were found not to be proximately related to the injuries suffered, in the present case, Martin's illegalities were directly related to the injury that occurred.

 This exception " 'requires the knowledge and sanctioning of the illegal act at the time of contracting by the owner.' " *Ryobi Die Casting v. Montgomery*, 705 N.E.2d 227, 230 (Ind.Ct.App.1999), *trans. denied* (quoting *Cummings v. Hoosier Marine Props. Inc.*, 173 Ind.App. 372, 390, 363 N.E.2d 1266, 1277 (1977) (citing *Prest–O–Lite Co. v. Skeel*, 182 Ind. 593, 106 N.E. 365, 367 (1914))). It does not apply to owners who merely become aware of illegal acts during the course of performance of the contract, absent the owner/employer's participation in or direction of the illegal act. *Id.* at 231.

Here, the act of hauling logs itself is not illegal. The designated evidence did not establish that LaFountaine had any knowledge of Martin's alleged failure to comply with licensing regulations or that LaFountaine participated in or directed this failure to comply. Further, the reasoning from the *Inland Steel* case is applicable to the present case. There, a panel of this court determined that a shipper was not liable for the negligence of a trucker who had failed to register with the state department of revenue. *Inland Steel*, 608 N.E.2d at 1383–84. In making this determination, it was observed that, "[t]he violation of statutory duty is not actionable negligence unless it is also the *proximate cause* of the injury." *Id.* at 1383. "In order to find that an injury was the proximate result of a statutory violation, the injury must have been a foreseeable consequence of the violation and would not have occurred if the requirements of the statute had been observed." *Id.* Because the trucker's failure to register with the department of revenue could not be considered to be the proximate cause of the traffic accident that occurred and because the immediate cause of the accident was the disregarding of a traffic signal, the principal was not liable for the illegal acts of the independent contractor. *Id.* at 1384.

Likewise, the reasoning from *Inland Steel* is applicable to the circumstances in this case. Any failure of Martin to properly comply with licensing regulations has not been established to be the proximate cause of the accident that occurred on December 9, 2003. The evidence did not establish that the injuries that occurred here were the foreseeable consequences of Martin's violation and would not have occurred if Martin had properly followed the licensing regulations. Therefore, this exception does not apply.

In sum, the Moores have failed to establish any of the exceptions to the general rule of non-liability of a principal for the negligence of an independent contractor.

Thus, the trial court did not err in determining that LaFountaine was not liable for the negligence of Martin on the basis of his status as an independent contractor, and it properly granted summary judgment in favor of LaFountaine.

## IV. Joint Venture

 A joint venture has been defined as an association of two or more persons formed to carry out a single business enterprise for profit. *Byrd v. E.B.B. Farms,* 796 N.E.2d 747, 753 (Ind.Ct.App. 2003), *trans. denied* (citing *Inland Steel,* 608 N.E.2d at 1378). For a joint venture to exist, the parties must be bound by an express or implied contract providing for (1) a community of interests, and (2) joint or mutual control, that is, an equal right to direct and govern the undertaking, that binds the parties to such an agreement. *Id.* at 754. A joint venture is similar to a partnership except that a joint venture contemplates only a single transaction. *Id.* A joint venture agreement must also provide for the sharing of profits. *Id.*

The Moores argue that the trial court erred in granting summary judgment because LaFountaine and Martin were involved in a joint venture, and therefore, LaFountaine should be liable for the actions of Martin. The Moores believe that a question of fact exists as to whether LaFountaine and Martin were involved in a joint venture because a community of interest existed between Martin and LaFountaine based on the fact that Martin was hauling logs that LaFountaine had sold to Wood and the fact that Martin had placed a LaFountaine logo on his tractor-trailer. They also contend that a question of fact exists as to whether LaFountaine and Martin were to share profits because Martin was not willing to testify how he was to be paid for this particular transaction, and Wood and LaFountaine gave conflicting versions of how Martin was to be paid.

The designated evidence demonstrates that Martin was an independent contractor who was hired to haul logs from Silver Lake to Wood's place of business in Mooresville. LaFountaine sold the logs to Wood without any input or involvement by Martin, and Martin transported them without any input or involvement by LaFountaine, as Martin was in control of how the logs were secured on the trailer and what route he took to reach Wood's facility. *Appellant's App.* at 97. Although Martin had painted LaFountaine's logo on his truck, this was not done with LaFountaine's permission, and Martin testified that he only did this as a show of appreciation for all of the business that LaFountaine had given him. *Id.* at 95, 221. In fact, Martin was told to remove the logo as soon as LaFountaine saw it. *Id.* at 167–68. Further, no evidence was presented that Martin shared in any profit that LaFountaine made from the sale of the logs. The evidence demonstrated that Martin was paid by the load based on the number of miles he traveled or per board feet of wood he hauled. *Appellant's App.* at 212. Therefore, the undisputed evidence demonstrated that Martin was not engaged in a joint venture with LaFountaine, and the trial court properly found that no joint venture existed between them.

Affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.