

FILED

Nov 30 2016, 6:39 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas J. Dall, Jr.
Law Offices of Blake R. Maislin, LLC
Cincinnati, Ohio

ATTORNEYS FOR APPELLEE
JOE'S CONSTRUCTION, LLC
AND JOE GETZ

Richard T. Mullineaux
Crystal G. Rowe
Jacob B. Vissing
Kightlinger & Gray, LLP
New Albany, Indiana

R. Patrick Magrath
Merritt K. Alcorn
Alcorn Sage Schwartz & Magrath,
LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE
PROPERTY-OWNERS
INSURANCE COMPANY

William J. Beggs
Jennifer L. Upton
Bunger & Robertson
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mark Vinup,

*Appellant-Plaintiff,*

v.

Joe's Construction, LLC and Joe Getz,

*Appellees-Defendants,*

and

Property-Owners Insurance Company,

*Appellee-Plaintiff,*

v.

Joe's Construction, LLC and Joe Getz,

*Appellees-Defendants.*

November 30, 2016

Court of Appeals Case No. 58A04-1602-CT-502

Appeal from the Ohio Circuit Court

The Honorable James D. Humphrey, Judge
The Honorable Kimberly A. Schmaltz, Magistrate

Trial Court Cause No. 58C01-1404-CT-2

**Kirsch, Judge.**

After Mark Vinup ("Vinup") was injured on the job while working for Joe's Construction, LLC and Joe Getz (together, "Joe's Construction"), Vinup filed a lawsuit against Joe's Construction seeking damages for his personal injuries. The commercial general liability insurer for Joe's Construction, Property-Owners Insurance Company ("Property-Owners"), filed a declaratory judgment action, seeking a declaration that, pursuant to a policy exclusion, it had no duty to defend and no duty to pay any judgment that might be rendered against Joe's Construction or Joe Getz ("Getz"). The trial court consolidated the declaratory

judgment action with Vinup's action, and, thereafter, Property-Owners and Joe's Construction each filed a motion for summary judgment. The trial court granted both motions, and Vinup now appeals, raising several issues that we consolidate and restate as: Whether the trial court erred when it determined as a matter of law that Vinup was an employee of Joe's Construction at the time he was injured.

[2]     We affirm.

## Facts and Procedural History

[3]     Getz began operating Joe's Construction in 1989 as a "d/b/a," and in 2011, he converted it to a limited liability company. *Appellant's App*. at 190. Getz generally worked by himself at Joe's Construction and hired other laborers when he "need[ed] an extra hand or two" for projects. *Id*. Joe's Construction did not issue W-2 or 1099 forms and, instead, paid workers in cash or by trading labor. Joe's Construction did not carry worker's compensation insurance. *Id*. In April 2012, Joe's Construction was doing work on a project for the Aberdeen Pate Water Company ("Aberdeen Project"), installing water lines. At some point, Vinup was hired by Joe's Construction,[1] along with two

---

[1] Prior to being hired by Joe's Construction, Vinup had borrowed money from Getz, and Getz agreed to allow Vinup to pay back the debt by having Vinup give some money back to Getz after each time that Joe's Construction paid Vinup.

other men, Shane Adams ("Adams") and Anthony McAlister ("McAlister") to work on the Aberdeen Project.

[4] For the Aberdeen Project, water pipes, measuring twenty feet in length and weighing in excess of 250 pounds, were loaded and transported on the bed of a trailer and bound together with a metal band. After the crew from Joe's Construction dug a trench for the pipes, a truck would haul the trailer loaded with pipes to an area adjacent to the trench, and the metal bands were cut. The pipes were then individually rolled off the trailer, onto the ground, and into the trench. On April 3, 2012, while Vinup was working, a large pipe that had been cut loose on the trailer "took a bad hop" and started rolling down a hill. *Id*. at 157. Vinup attempted to stop the pipe by using a spud bar, but the pipe hit Vinup and knocked the spud bar out of his hand. The pipe hit Vinup in the face and head, resulting in injuries.

[5] When Vinup contacted Joe's Construction to pursue Worker's Compensation benefits, an attorney representing Joe's Construction sent Vinup a letter stating that Vinup was not eligible for benefits because he was an independent contractor. *Id*. at 207 (Ex. B to Getz deposition). Thereafter, Vinup filed a complaint for damages against Joe's Construction. Property-Owners filed a declaratory judgment complaint, asking for a determination that, pursuant to a policy exclusion (1) the policy did not provide coverage for the potential liability of Joe's Construction or Getz, (2) it had no duty to defend, and (3) it would not be liable for any judgment rendered in the future against Joe's Construction or Getz related to Vinup's injuries. The trial court consolidated

Vinup's action with Property-Owners's action, and, thereafter, Property-Owners and Joe's Construction each filed a motion for summary judgment, asserting that Vinup was an employee of Joe's Construction at the time of the accident.

[6] Property-Owners's position was that the Commercial General Liability Policy issued to Joe's Construction for the period from September 15, 2011 through September 15, 2012 ("the Policy) contained an "Employer's Liability" exclusion clause that excluded coverage from bodily injury to employees of the insured arising out of and in the course of employment, and, thus, it was not liable for coverage for Vinup's injuries. *Id*. at 94. Joe's Construction's position was that Vinup was an employee under Indiana law, and, therefore, his exclusive remedy was to pursue a claim for benefits under Indiana's Worker's Compensation Act.

[7] Property-Owners designated evidence including certain pleadings and exhibits, the Policy at issue, and deposition excerpts from Vinup, Getz, McAlister, and Adams. Joe's Construction also designated evidence that included deposition excerpts from Vinup, Getz, McAlister and Adams. The evidence was, to some degree, overlapping and reflected that Getz would hire people as he needed them and that he was the person in charge of those workers. Getz solely determined the schedule, work hours, and breaks for all individuals that worked for Joe's Construction, Getz provided the workers with tools and safety vests, and he determined the work to be done on each day. Vinup, McAlister, and Adams were all hired as "general laborers." *Id*. at 194. Getz, and no one else,

told the workers "what to do." *Id*. at 156. Joe's Construction designated evidence that Getz considered Vinup to be an employee of Joe's Construction for the period of time that he was working on the Aberdeen Project and that Vinup considered Getz to be "the boss." *Id*. at 156, 167, 194. The designated evidence showed that Getz paid Vinup $10 per hour, and they generally worked eight-hour days. Vinup expected that work on the Aberdeen Project would last several months, and he would work on it "until we got it done." *Id*. at 154. Previously, Getz had loaned Vinup money in increments that totaled $363, and Vinup paid back Getz as he would get paid by Joe's Construction. He had paid back about $50 when the accident occurred, which was only a few days into the job. The designated evidence reflected that the type of work that Joe's Construction was doing on the Aberdeen Project was part of the usual and ordinary course of business for Joe's Construction.

[8] Vinup opposed the summary judgment motions, arguing that, with regard to Property-Owners, Vinup did not qualify as an "employee" under the Policy and, instead, was a "temporary employee" for whom coverage was available under the Policy. He also argued that the determination of one's employment status is fact-sensitive and thus improper for determination by summary judgment. Vinup's designations in opposition to the two summary judgment motions included, among other things, evidence that Vinup was a general laborer, who worked various odd jobs for various contractors in the course of a year and that Getz never considered Vinup to have been a full-time employee of Joe's Construction. *Id*. at 152, 192. Vinup designated evidence that Joe's

Construction paid its workers in cash or trade, never issued W-2 or 1099 forms to its workers, and payroll taxes were never withheld from Vinup's earnings. *Id.* at 192. Vinup designated evidence that Getz expected that once Vinup's debt to Getz was paid off, Vinup would no longer work for Getz. *Id*. at 194. With regard to Getz's control of Vinup and the other workers, Vinup designated evidence that Getz did not train them or specifically instruct them on how to perform the assigned physical labor tasks. *Id*. at 214, 230.

[9] Following a hearing, the trial court granted summary judgment, by separate orders, in favor of Property-Owners and Joe's Construction, determining that no genuine issue of fact existed, that Vinup was an employee, and the alleged injuries arose out of in and in the course of Vinup's employment. *Id*. at 23-26. Vinup now appeals.

## Discussion and Decision

[10] When reviewing a grant or denial of summary judgment, we apply the same standard as the trial court: summary judgment is only appropriate when the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Walker v. Martin*, 887 N.E.2d 125, 130 (Ind. Ct. App. 2008), *trans. denied*. On appeal, we consider all of the designated evidence in the light most favorable to the nonmoving party. *Walker*, 887 N.E.2d at 130. The trial court's order granting a motion for summary judgment is cloaked with a presumption of validity, and a party appealing from a summary judgment decision has the

burden of persuading the court that the grant or denial of summary judgment was erroneous. *Id.*

[11] The issue before us is whether the trial court erred when it determined, as a matter of law, that Vinup was an employee of Joe's Construction at the time that he suffered injuries. As is relevant here, the consequences of that employee status are: (1) Vinup's remedy is limited to that available under the Worker's Compensation Act, and he cannot pursue a negligence action against Joe's Construction;[2] and (2) pursuant to a policy provision excluding from coverage payment for injuries to an employee, Property-Owners owed no duty to defend and would not be liable for any judgment rendered against Joe's Construction or Getz. Vinup contends that genuine issues of material fact exist on the issue of whether he was an employee or, instead, was an independent contractor, and, therefore, the trial court erred when it granted summary judgment in favor of Joe's Construction and in favor of Property-Owners. He asks that we reverse the summary judgment orders and remand the matter for trial.

### A. Ten-Factor Analysis

[12] Whether one acts as an employee or an independent contractor generally is a question for the trier of fact. *Mortg. Consultants, Inc. v. Mahaney,* 655 N.E.2d 493, 496 (Ind. 1995). "However, if the significant underlying facts are

---

[2] *See* Ind. Code § 22-3-2-6 (Indiana's Worker's Compensation Act is exclusive remedy available to employees for accidental personal injury arising out of and in the course of employment).

undisputed, the court may properly determine a worker's classification as a matter of law." *Walker*, 887 N.E.2d at 131 (citing *Moberly v. Day*, 757 N.E.2d 1007, 1009 (Ind. 2001)). An employee is one "'employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control,'" whereas an independent contractor generally controls the method and details of the task and answers to the principal only as to the results. *Id.* (quoting Restatement (Second) of Agency § 220(1) and citing *Wishard Mem'l Hosp. v. Kerr,* 846 N.E.2d 1083, 1090 (Ind. Ct. App. 2006)).

[13]     As Vinup correctly observes, our Supreme Court in *Moberly* set forth a non-exhaustive list of ten factors to be used in the analysis of determining whether one is an independent contractor or an employee:

> (1) the extent of control which, by the agreement, the master may exercise over the details of the work;

> (2) whether or not the one employed is engaged in a distinct occupation or business;

> (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

> (4) the skill required in the particular occupation;

> (5) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(6) the length of time for which the person is employed;

(7) the method of payment, whether by the time or by the job;

(8) whether or not the work is a part of the regular business of the employer;

(9) whether or not the parties believe they are creating the relation of master and servant; and

(10) whether the principal is or is not in business.

757 N.E.2d at 1010 (applying analysis of Restatement (Second) of Agency § 220). All of the ten circumstances are considered in the analysis, and although no single factor is dispositive, "the 'extent of control' factor is the single most important factor in determining the relationship." *Walker*, 887 N.E.2d at 131 (citing *Wishard Mem'l Hosp.*, 846 N.E.2d at 1090). On appeal, Vinup argues that six of the ten *Moberly* factors weigh in favor of independent contractor status and thus, genuine issues of material fact exist and make summary judgment in favor of Joe's Construction and Property-Owners inappropriate. We address each of Vinup's six challenges in turn.

[14] First, with regard to the extent of control that Getz exercised, Vinup argues that "[t]he mere fact that [Getz] was at the job site does not mean that he was exercising 'control' over the manner in which [Vinup] dug trenches" and that merely telling Vinup what needed to be done did not reflect control as is necessary for Vinup to be considered an employee. *Appellant's Br.* at 19. Vinup

also notes that, although Getz may have directed Vinup to dig trenches, Vinup's designated evidence shows that he was using a spud bar to stop pipes as they rolled off the truck, thus "Vinup had sufficient control . . . at the job site to do a different job than that which had been assigned by Getz." *Id*. at 22. Accordingly, Vinup asserts, the "extent of control" factor weighs in favor of finding Vinup was an independent contractor. We disagree.

[15]    Under the first factor, an employee-servant is one "employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." *Walker*, 887 N.E.2d at 131 (quoting Restatement (Second) of Agency § 220(1)). Conversely, an independent contractor generally controls the method and details of his task and is answerable to the principal as to results only. *Id.* Here, Getz solely determined and assigned what tasks were to be done by workers of Joe's Construction. That is, Getz determined the location where the work was to be done, in this case, where on the Aberdeen Project they would be working. He determined the workers' schedules, including work hours and breaks, and he had the power to remove anyone from his employment. Joe's Construction provided the tools and equipment, including safety vests, and he determined when those were to be worn. Vinup did not use any of his own tools in the performance of his work for Joe's Construction. Contrary to Vinup's assertion, we find that the "control" factor weighs in favor of employee status.

[16] Next, Vinup addresses the third *Moberly* factor, which concerns whether the kind of occupation consists of work usually done under the direction of an employer or by a specialist without supervision, and he asserts, "it is common for independent contractors to be hired on construction jobs" for the type of work he was doing on the Aberdeen Project, and, therefore, "this factor slants in favor of independent contractor" status. *Appellant's Br*. at 25. Vinup's singular statement that often independent contractors are hired for construction jobs does not demonstrate whether his particular occupation at Joe's Construction was under the direction of an employer or by a specialist. Furthermore, evidence designated by Joe's Construction, namely Getz's deposition, indicates that the type of work that Vinup and his coworkers were doing on the Aberdeen Project was the type of work that, in that locality, was typically done under the direction and supervision of an employer. *Appellant's App.* at 195. Thus, we find this factor weighs in favor of employee status.

[17] Vinup's next argument concerns the fourth *Moberly* factor, addressing the skill required for the particular occupation. "Unskilled labor is usually performed by employees, while skilled labor is often performed by independent contractors." *Walker*, 887 N.E.2d at 132 (citing *Moberly*, 757 N.E.2d at 1010). Vinup contends that sometimes he was required to drive a dump truck, which requires special skill and weighs in favor of independent contractor status. The designated evidence reveals, however, that Vinup was hired to, and did perform, general labor for Joe's Construction that primarily consisted of digging trenches and laying water line pipe and sometimes driving a dump truck.

Indeed, Vinup acknowledges in his brief that "he was doing unskilled labor, which did not require any special instructions or supervision." *Appellant's Br*. at 21-22. Getz testified that there were no special skills, training, certification, or licensing required for Vinup to perform his job. *Appellant's App*. at 194. Vinup has failed to show that he was performing skilled labor while working for Joe's Construction.

[18] Next, Vinup addresses the sixth *Moberly* factor, which considers the length of employment, and argues that Getz did not intend a long-term employment relationship with Vinup and, rather, expected only that Vinup would work for Joe's Construction until his debt was repaid to Getz. *See Walker*, 887 N.E.2d at 133 (observing that a long-term relationship may indicate employee status, especially employment over a period of time with regular hours). With regard to the debt, there is little evidence about it, other than Vinup borrowed money in various sums from Getz that totaled approximately $363 and that, at the time of the accident, Vinup had repaid approximately $50; thus, most of it had yet to be repaid. Other designated evidence showed that Vinup had no other employment during the time that he worked for Joe's Construction, he expected that his work on the Aberdeen Project – generally, eight hours per day – would last several months, and he had no plans to find additional work during this time. He anticipated that he would work on the Aberdeen Project "until we got it done." *Appellant's App*. at 154. We find these circumstances indicate employment over a period of time with regular hours and suggest an employee, as opposed to an independent contractor, relationship.

[19] Vinup next addresses the seventh *Moberly* factor, concerning the method of payment, *i.e.*, whether by the time or by the job. "Sporadic payments in lump sum amounts for each job performed, instead of payments by the hour or on a weekly basis are more typical of an independent contractor than an employee." *Walker*, 887 N.E.2d at 133. Vinup argues that in his case this factor weighs in favor of independent contractor status because, although he was paid an hourly rate, he was paid sporadically "however or whenever" the workers desired to be paid. *Appellant's App*. at 190. Although paid not at consistent intervals, Joe's Construction paid Vinup an hourly wage of ten dollars per hour, and Vinup generally worked eight-hour days. Thus, he was still paid by the hour, and not according to completion of a job or project. On balance, the seventh factor reflects employee status.

[20] Lastly, Vinup argues that, pursuant to the ninth *Moberly* factor, regarding whether the parties believed that they were creating an employer/employee relationship, the designated evidence demonstrates that Joe's Construction intended Vinup's status to be an independent contractor. Vinup relies on the June 2012 letter that then-counsel for Joe's Construction sent to Vinup, telling Vinup that he was an independent contractor and not an employee of Joe's Construction.[3] However, the relevant inquiry is what *the parties* believed, and

---

[3] We recognize that Joe's Construction completely changed its position, initially telling Vinup in the June 2012 letter that Worker's Compensation benefits were not available to him, and later taking the position that his only remedy is to seek Worker's Compensation benefits. Joe's Construction indicates that the June 2012 letter was an "incorrect assessment by prior counsel," noting that it was given two months after the incident and before a full investigation had been conducted. *Joe's Construction Br*. at 26 n.4. Although Joe's

Joe's Construction designated evidence that Getz considered Vinup to be an employee of Joe's Construction during the Aberdeen Project, and Vinup considered Getz to be "the boss" when he was working for Joe's Construction. *Appellant's App*. at 156, 167, 194. We find that the designated evidence indicates that, at the time, Getz and Vinup believed that they had an employee/employer relationship.

[21] Although Vinup does not claim that the four remaining *Moberly* factors do not support an employee status, we nevertheless will address them, as all ten of the factors are to be considered in the analysis. *Walker*, 887 N.E.2d at 131. With regard to the second factor, pertaining to whether or not the one employed is engaged in a distinct occupation or business, there was no designated evidence that Vinup engaged in a distinct occupation during the time that he worked for Joe's Construction. Indeed, the evidence was that Vinup worked solely for Joe's Construction and had no plans to gain other employment during the time that he worked for Joe's Construction. *Appellant's App*. at 285.

[22] The fifth factor examines whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work. Under this factor, "it is particularly significant if an employer provides tools . . . and the same would presumably be true if the workman is the provider." *Moberly*, 757 N.E.2d at 1012. Here, Joe's Construction provided the tools and

Construction urges that the letter "has no bearing on this appeal[,]" *id*., it was designated evidence and considered by the trial court during summary judgment proceedings.

safety equipment; Vinup did not use any of his own tools while working for Joe's Construction. Additionally, Vinup testified that he and the other workers would meet at Getz's home, and Getz would transport them or provide the equipment for them to get to the job site. *Appellant's App.* at 271, 283. Thus, the fifth factor weighs in favor of Vinup's status as being an employee of Joe's Construction. The eighth factor considers whether the relevant work is part of the regular business of the employer. Here, the designated evidence demonstrated that the type of work that Joe's Construction provided on the Aberdeen Project was part of the usual and ordinary course of business for Joe's Construction. *Id.* at 193. The tenth factor considers whether the principal is in business. Here, the designated evidence shows that Joe's Construction is a construction business that began in 1989, first starting as a "d/b/a" and later converting to a limited liability company. *Id.* at 190.

[23] Upon review of the ten-factor analysis, we find that Vinup has failed to establish that a genuine issue of material fact exists on the issue of whether Vinup's status was that of an employee at the time that he was injured.[4]

---

[4] The Restatement of Employment Law Section 1.01, adopted in May 2014, addresses the distinction between an employee and an independent businessperson. Section 1.01, Conditions for Existence of Employment Relationship, states:

> (a) Except as provided in §§ 1.02 and 1.03, an individual renders services as an employee of an employer if:
>
>> (1) the individual acts, at least in part, to serve the interests of the employer;
>>
>> (2) the employer consents to receive the individual's services; and
>>
>> (3) the employer controls the manner and means by which the individual renders services, or the employer otherwise effectively prevents the individual from rendering those services as an independent businessperson.

Accordingly, the trial court's grant of summary judgment to Joe's Construction and Property-Owners was not erroneous.

### B. Temporary Employee Inquiry

[24] On appeal and in opposing Property-Owner's motion for summary judgment, Vinup also asserted that Property-Owners "was and remains obligated to provide coverage" because he does not fit within the Policy's definition of an employee and, instead, was a "temporary worker" for whom coverage was not excluded. *Appellant's Br.* at 19. The trial court disagreed and granted summary judgment to Property-Owners, finding that Vinup "was an employee of Joe's Construction" at the time that he sustained injuries and that the Policy does not provide coverage. *Appellant's App.* at 26.

[25] On appeal, Vinup explains that the Policy provides that that the term "Employee" includes a "leased worker" but does not include a "temporary worker," which the Policy defines as follows:

> a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

---

(b) An individual renders services as an independent businessperson and not as an employee when the individual in his or her own interest exercises entrepreneurial control over important business decisions, including whether to hire and where to assign assistants, whether to purchase and where to deploy equipment, and whether and when to provide service to other customers.

Restatement of Employment Law § 1.01 (2015).

*Id.* at 109, 112.  Vinup argues that the designated evidence reveals that he worked for Joe's Construction intermittently, as opposed to being a permanent full-time employee on payroll, and that Joe's Construction hired him and other workers, on an as-needed basis.  Joe's Construction would pay such workers in cash or trade, taxes were not withheld, and Joe's Construction did not issue W-2 or 1099 forms.  Getz testified that he expected Vinup "would have probably moved on down the road" after his debt was paid in full.  *Id.* at 194.  Vinup argues that these factors indicate that he was "temporary," and thus the Policy does not exclude coverage for him, or that, at a minimum, genuine issues of material fact remain as to whether he was a temporary worker and not excluded from the Policy's coverage.

[26]  Property-Owners maintain that Vinup was not a "temporary worker" as that term is defined in the Policy.  Property-Owners emphasizes that a "temporary worker," as defined in the Policy is someone who is "*furnished to the insured* to substitute for a permanent employee or to meet seasonal or short-term workload conditions."  *Id.* at 112 (emphasis added).  Vinup was neither "furnished" to Joe's Construction by some other party nor was he substituting for a permanent employee.  Therefore, Property-Owners asserts, Vinup did not qualify under the Policy's definition of "temporary worker."  We agree.  Vinup testified that Getz asked for his help with the Aberdeen Project, and Getz testified likewise, stating that he offered the work to Vinup.  *Id.* at 154, 193.  Under the plain language of the Policy, Vinup was not a "temporary worker,"

and the trial court did not err when it granted Property-Owners's motion for summary judgment.

[27] Affirmed.[5]

May, J., and Crone, J., concur.

---

[5] We recognize that, after making its arguments regarding Vinup's employment status, Joe's Construction states, "Although the above arguments [regarding Vinup's status as an employee] are dispositive and support an affirmance of the trial court's summary judgment order, it is important to note that Getz [as the owner-member of Joe's Construction, an Indiana limited liability company] is independently shielded from personal liability" for any injuries suffered by Vinup while working for Joe's Construction. *Joe's Construction Appellee's Br.* at 31. Joe's Construction also raised the matter in its motion for summary judgment and at the hearing. *Appellant's App.* at 256-259; *Tr.* at 18-19. Vinup did not appear to address the matter either at the trial court level, or by reply brief. *Appellant's* App. 299-307. However, as Joe's Construction acknowledges on appeal, the dispositive issue is whether Vinup was or was not an employee, which determines whether Worker's Compensation is Vinup's exclusive remedy. We decline to reach the matter of Getz's potential personal liability, as we find it is beyond the scope of the issue before us.