

FILED
Apr 17 2018, 9:31 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Philip E. Kalamaros
Hunt Suedhoff Kalamaros LLP
Saint Joseph, Michigan

ATTORNEY FOR APPELLEE

Trent A. McCain
McCain Law Offices, P.C.
Merrillville, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Family Christian World, Inc. d/b/a Family Christian Center, Stephan "Steve" Munsey, Melodye J. Munsey, and Darryl Anthony Smith, | April 17, 2018 |
| | Court of Appeals Case No. 45A04-1709-CT-2091 |
| *Appellants-Defendants,* | Appeal from the Lake Superior Court |
| v. | The Honorable John R. Pera, Judge |
| Vicki Olds, | Trial Court Cause No. 45D10-1611-CT-191 |
| *Appellee-Plaintiff.* | |

**Najam, Judge.**

## Statement of the Case

[1]     Family Christian World, Inc., d/b/a Family Christian Center ("FCC"),

Stephen Munsey, and Melodye Munsey ("the Munseys") appeal the trial

court's denial of their motion to dismiss Vicki Olds' complaint seeking damages

for the alleged wrongful death of her daughter, Dominique Olds ("Nikki"). FCC and the Munseys present a single issue for our review, namely, whether the trial court erred when it denied their motion to dismiss, in which they alleged that Nikki was their employee and, thus, that the Worker's Compensation Act provides the exclusive remedy for any claim arising from her death. We affirm.

## Facts and Procedural History

[2] FCC is a church in Munster, and the Munseys are employed by the church as Senior Pastors. Nikki, a full-time student at Valparaiso University, was a member of FCC's congregation. In April and May 2015, FCC hired Nikki "as a babysitter, under the direct supervision of the Munseys."[1] Appellants' App. Vol. II at 16. Nikki filled out an IRS Form W-9[2] when she was hired. Nikki babysat for FCC on five occasions between April 1 and May 20, 2015,[3] both at the FCC church and at the Munseys' private residence, and FCC paid Nikki on each occasion. Nikki did not have a set work schedule with FCC, but she

---

[1] In their brief on appeal, FCC and the Munseys allege that both "FCC and the Munseys were employers of [Nikki] at the time of [her death]." Appellants' Br. at 9. However, in an affidavit, Melodye states that she and Stephen were employed by FCC as senior pastors, which suggests that when they supervised Nikki they were acting as agents of FCC. There is no evidence that the Munseys hired Nikki on their own account. Nevertheless, "[w]here two employers 'so associate themselves together that both are in direct control of the employee and he is made accountable to both, he will be considered an employee of both employers[.]'" *GKN Co. v. Magness*, 744 N.E.2d 397, 402 (Ind. 2001) (quoting *U.S. Metalsource Corp. v. Simpson*, 649 N.E.2d 682, 685 (Ind. Ct. App. 1995)).

[2] A Form W-9 provides information about an independent contractor necessary for the hiring party to report at a later date on a Form 1099-MISC for payments made.

[3] Nikki babysat for FCC on April 1, April 18, twice on April 28, and on May 20.

accepted babysitting jobs with FCC if those jobs did not conflict either with her job in the dining hall at Valparaiso University or her classes there.

[3] On May 29, 2015, Nikki was babysitting the Munseys' granddaughter at the Munseys' residence in Schererville. At approximately 3:00 p.m., someone found Nikki "floating face down" and "unresponsive" in the Munseys' swimming pool. *Id.* at 17. Nikki was transported by ambulance to a hospital, but efforts to resuscitate her were unsuccessful, and she died on June 1.

[4] On November 17, 2016, Olds filed a complaint alleging in relevant part that FCC and the Munseys were liable for Nikki's wrongful death.[4] On December 16, FCC and the Munseys filed a motion to dismiss for lack of subject matter jurisdiction under Indiana Trial Rule 12(B)(1).[5] In particular, they alleged that Nikki was their employee and, as such, that Olds could only bring a claim against them under the Worker's Compensation Act ("the Act"). The trial court denied that motion following a hearing. This certified interlocutory appeal ensued.

## Discussion and Decision

[5] FCC and the Munseys contend that Nikki was their employee and that the Act provides the exclusive remedy for her death, which, they maintain, arose out of

---

[4] Pursuant to Indiana Code Section 34-23-2-1(c)(1), Mother named Nikki's father, Darryl Anthony Smith, as a codefendant in the complaint, but he did not appear and does not participate in this appeal.

[5] They also moved to dismiss the complaint under Trial Rule 12(B)(6), but they do not raise that issue on appeal.

and in the course of her employment. Thus, they assert that the trial court is without subject matter jurisdiction to hear Olds' complaint.

[6] The Act is the exclusive means by which an employee, her personal representatives, dependents, or next of kin, at common law or otherwise, can pursue compensation for an employee's injury or death arising out of and in the course of her employment. *See* Ind. Code § 22-3-2-6 (2018). A defense against a negligence claim on the basis that the plaintiff's exclusive remedy is to pursue a claim for benefits under the Act is properly advanced through a motion to dismiss for lack of subject matter jurisdiction under Indiana Trial Rule 12(B)(1). *See Wishard Memorial Hosp. v. Kerr*, 846 N.E.2d 1083, 1087 (Ind. Ct. App. 2006). "'In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider not only the complaint and motion but also any affidavits or evidence submitted in support.'" *Id.* (quoting *GKN Co. v. Magness*, 744 N.E.2d 397, 400 (Ind. 2001)). The trial court may weigh the evidence to resolve the jurisdictional issue. *Id.*

[7] The standard of appellate review for a Trial Rule 12(B)(1) motion to dismiss is dependent upon what occurred in the trial court, that is: (i) whether the trial court resolved disputed facts; and (ii) if the trial court resolved disputed facts, whether it conducted an evidentiary hearing or ruled on a paper record. *Id.* Here, the trial court ruled entirely on a paper record. We review de novo a trial court's ruling on a motion to dismiss where the facts before the trial court are disputed and the trial court rules on a paper record. *Id.*

When challenging the trial court's jurisdiction, the purported employer bears the burden of proving that an alleged employee's claim falls within the scope of the Act unless the complaint demonstrates the existence of an employment relationship. *Id.* at 1088. Olds' complaint does not state whether Nikki was an employee or independent contractor. Therefore, FCC and the Munseys bore the burden of demonstrating a lack of subject matter jurisdiction based on their claim that Nikki was their employee and Olds' exclusive remedy fell under the Act.[6] *See id.*

In *Moberly v. Day*, 757 N.E.2d 1007, 1010-11 (Ind. 2001), our Supreme Court set out a ten-factor analysis to distinguish employees from independent contractors. Those factors are:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

---

[6] The negative judgment standard of review does not apply here. A negative judgment occurs when a decision is made against the party who bore the burden of proving facts to a fact-finder at an evidentiary hearing. *See, e.g.*, *Romine v. Gagle*, 782 N.E.2d 369, 376 (Ind. Ct. App. 2003), *trans. denied*. Such decisions may not be challenged on appeal on the grounds that they are not supported by sufficient evidence; rather, they may be challenged only on the grounds that they are contrary to law. 2 Ind. L. Encyc. Appeals § 337 (Supp. Jan. 2018). Here, the trial court did not hold an evidentiary hearing to determine facts, and we are in just as good a position on appeal as the trial court was to determine the issues raised. Thus, our standard of review is *de novo*.

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*Id.* at 1010 (quoting Restatement (Second) of Agency § 220(2)). No single factor is dispositive. *Id.* We consider each factor in turn.

*Extent of Control Over Details of the Work*

[10] In support of their motion to dismiss, FCC and the Munseys submitted to the trial court Melodye Munsey's affidavit, which provided in relevant part that the Munseys were employed as Senior Pastors at FCC and that they had: "direct authority" over Nikki in her work for FCC; the "power and right to direct and control the means, manner[,] and method" of Nikki's work for FCC; and the

right to discharge Nikki.[7] Appellants' App. Vol. II at 63. In addition, the affidavit stated that, "[t]o the extent that things were needed by [Nikki] to perform her work for [FCC], we provided them, but did not provide a cell phone or a car." *Id.* And the affidavit stated that the Munseys "established [Nikki's] work boundaries, determining where and when she would work for [FCC]." *Id.* In light of that evidence, FCC and the Munseys contend that "this factor weighs heavily in favor" of concluding that Nikki was an employee. Appellants' Br. at 11.

[11] In *Moberly*, our Supreme Court set out the test on the control factor as follows: the Restatement (Second) of Agency § 220(1)

> defines a servant (i.e. employee) as one "employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." Comment d. to subsection (1) further describes control or right to control as "important and in many situations . . . determinative."

757 N.E.2d at 1010. While the Restatement (Second) of Agency § 220(1) clearly states that an employee is one who is "subject to the other's control or *right* to control," our case law emphasizes evidence of the *actual* control an

---

[7] While FCC and the Munseys contend that their right to discharge Nikki at any time bears on the control factor, we cannot agree. The right to discharge is one of seven factors our courts consider to determine the existence of an employer-employee relationship under the borrowed servant doctrine, *see Hale v. Kemp*, 579 N.E.2d 63, 67 (Ind. 1991), which is not at issue in this appeal. The ten-factor test in *Moberly*, which FCC and the Munseys concede applies here, does not include a "right to discharge" factor. 757 N.E.2d at 1010 n.3.

alleged employer exercised in the course of the working relationship. (Emphasis added.)

[12] For example, in *Moberly*, William Day, a farmer, hired Jay Moberly and Joe Hendershot to repair drainage tile in a field, and Moberly was injured when Hendershot negligently operated a backhoe in the course of fixing the drainage tile on Day's farm. *Id.* at 1008. The trial court concluded that Day was not liable for Moberly's injury because Hendershot was an independent contractor. *Id.* at 1013.

[13] In its analysis of the control factor, our Supreme Court observed that "the record d[id] not indicate any formal agreement about the extent of control Day exercised over Hendershot's work," but the record did "describe the working arrangement." 757 N.E.2d at 1010. In particular, the evidence showed that Day had told Hendershot and Moberly "what he wanted done and [they] would do it." *Id.* Day testified that he had told Moberly "to dig the holes up and fill in the tile, fix the tile." *Id.* at 1011. Day did not "specifically tell him each step," and he did not tell him "to operate the equipment or to dig the hole or to do the back-filling." *Id.* The Court held that the "evidence offered indicates that Hendershot was answerable to Day for results only, not the particulars of how he went about accomplishing assigned tasks." *Id.* Therefore, it held that "this important factor tilts the scale toward an independent contractor conclusion." *Id.*

[14]	In *Vinup v. Joe's Construction, LLC*, 64 N.E.3d 885 (Ind. Ct. App. 2016), this court also looked to the evidence of actual control exercised in the course of the parties' relationship to determine this factor. In *Vinup*, Joe Getz ran a company called Joe's Construction and hired Mark Vinup. After Vinup was injured on the job, he sued Joe's Construction. The trial court granted Joe's Construction's summary judgment motion, which alleged that Vinup was an employee and was, therefore, limited to damages under the Act. On appeal, this court considered evidence of the control factor as follows:

> Getz solely determined and assigned what tasks were to be done by workers of Joe's Construction. That is, Getz determined the location where the work was to be done, in this case, where on the Aberdeen Project they would be working. *He determined the workers' schedules, including work hours and breaks*, and he had the power to remove anyone from his employment.[8] Joe's Construction provided the tools and equipment, including safety vests, and he determined when those were to be worn. Vinup did not use any of his own tools in the performance of his work for Joe's Construction. Contrary to Vinup's assertion, we find that the "control" factor weighs in favor of employee status.

*Id.* at 891 (emphasis added).

[15]	Here, while Melodye's affidavit states that the Munseys in their positions as Senior Pastors for FCC had the *right* to control "the means, manner and

---

[8] Again, there is no "right to discharge" factor in the *Moberly* ten-factor test, and we disagree with the court in *Vinup* that it has any bearing on the control factor under the *Moberly* test. The "right to discharge" is relevant to the seven-factor *Hale* test because it bears on which of two employers has control over an employee.

method" of Nikki's work for FCC, Appellants' App. Vol. II at 63, there is no evidence that the Munseys exercised actual control over Nikki when she babysat for FCC. As we observed in *Vinup*, an employer determines an employee's work schedule, including work hours. 64 N.E.3d at 891. But here the evidence shows that, while the Munseys would direct *where* she would babysit, Nikki controlled *when* she would babysit. Nikki had discretion in whether she would take a babysitting job when it was offered, and, moreover, no one was supervising or directing Nikki's work at the time of her death.

[16] Without evidence that Nikki had an agreement with FCC concerning the means, manner, or method by which she would discharge her babysitting duties, and without evidence that the Munseys exercised actual control over the means, manner, or method by which Nikki discharged her babysitting duties, we cannot say that this factor weighs in favor of a determination that Nikki was an employee.[9] We hold that this factor is neutral.

### Distinct Occupation

[17] The second factor considers whether the one employed is engaged in a distinct business or occupation. *Walker v. Martin*, 887 N.E.2d 125, 132 (Ind. Ct. App. 2008), *trans. denied*. In *Walker*, "the evidence demonstrated that Martin was

---

[9] FCC and the Munseys point out that, in her brief to the trial court, Olds conceded that this factor weighed in favor of employee status. But on appeal, Olds contends that this factor weighs in favor of independent contractor status. Regardless, Olds' concession to the trial court was not dispositive, and it is not dispositive here. Rather, we review *de novo* the complaint and evidence presented to the trial court relevant to each factor.

engaged in his own hauling business and did not work exclusively for" another entity. *Id.* Accordingly, we held that this factor "weigh[ed] in favor of Martin as an independent contractor." *Id.* Here, the evidence shows that Nikki was a full-time college student, worked part-time for Valparaiso University, and took babysitting jobs for FCC if she "did not have another commitment or a school obligation." Appellants' App. Vol. II at 47. Because Nikki was a full-time college student and did not work exclusively for FCC, this factor weighs significantly in favor of Nikki as an independent contractor.

### Kind of Occupation

[18] In *Moberly*, our Supreme Court's analysis of this factor was as follows: "Unsupervised specialists commonly perform this type of heavy-equipment repair, although employers do sometimes direct such work. This factor is therefore not particularly meaningful in this case." 757 N.E.2d at 1011. Depending on the nature of the job, a babysitter may be hired independently to supervise children in the stead of a parent or guardian, or she may, for example, be hired as an employee of a daycare business and work under direct supervision. Under the evidence presented here, this factor is neutral.

### Skill Required

[19] Babysitting does not require special skills, so this factor weighs moderately in favor of finding employee status.

*Supplier of Equipment and Work Location*

[20] The evidence shows that Nikki babysat either at FCC's church or the Munseys' residence. This factor weighs moderately in favor of finding employee status.

*Length of Employment*

[21] Nikki babysat for FCC on six occasions in April and May, 2015. Comment h. to the Restatement (Second) of Agency § 220(2) refers to "employment over a considerable period of time with regular hours," and comment a. to § 220(1) also describes an employee as "one who performs continuous service for another." *Moberly*, 757 N.E.2d at 1012. Here, Nikki neither worked regular hours for FCC, nor did she perform continuous service for FCC. The undisputed evidence shows that Nikki worked intermittently and had discretion in whether to take a babysitting job when it was offered. This factor weighs significantly in favor of independent contractor status.

*Method of Payment*

[22] FCC paid Nikki by the job. That is, while she was paid at an hourly rate, FCC paid Nikki on each occasion that she babysat. Indeed, Nikki was paid by two separate checks for babysitting twice on the same day, April 28, 2015. This factor weighs significantly in favor of independent contractor status. *See Moberly*, 757 N.E.2d at 1012.

*Regular Business of the Employer*

[23] There is no evidence that FCC is in the business of providing babysitting services. At most, any babysitting services FCC provides are ancillary to its

"business." This factor weighs significantly in favor of independent contractor status.

### Belief of the Parties

The IRS requires employers to report wage and salary information for employees on a Form W-2. *Berry v. Crawford*, 990 N.E.2d 410, 428 (Ind. 2013). Here, FCC and the Munseys did not present evidence that they had completed a Form W-2 for Nikki. Neither did they present evidence that Nikki had filled out a Form W-4, which employers use to determine withholding from an employee's wages on a Form W-2. Rather, Nikki filled out and signed a Form W-9 when she began babysitting for FCC, and that form is used when hiring independent contractors. In addition, FCC's records describe Nikki as a "vendor" in the ledger of payments made to her and show no withholding. Appellants' App. Vol. II at 45. This factor weighs significantly in favor of independent contractor status.

### Whether the Principal is in Business

FCC is a church, which has certain attributes of a business. As senior pastors of FCC, the Munseys manage the "business" of the church, although they are not engaged in a for-profit enterprise. This factor weighs in favor of employee status, but is not particularly meaningful here, given that FCC is not in the babysitting business. *See supra*.

*Conclusion*

In our analysis of whether an employer-employee relationship exists, "the factors must be weighed against each other as a part of a balancing test as opposed to a mathematical formula where the majority wins." *See GKN*, 744 N.E.2d at 402. Here, FCC and the Munseys presented evidence that the Munseys had the *right* to control the "means, manner, and method" of Nikki's babysitting, but they offered no evidence that they exercised control over Nikki while she babysat, and she was unsupervised at the time of her death. Appellants' App. Vol. II at 63. We hold that "the leading factor of control" is neutral, and we give no weight to this factor under these circumstances. *See Moberly*, 757 N.E.2d at 1013. The distinct occupation, length of employment, method of payment, and belief of the parties factors weigh significantly in favor of Nikki's independent contractor status. In particular, Nikki did not work exclusively for FCC, but was a full-time student and worked in a dining hall; Nikki worked irregular hours over the course of two months and had discretion whether to accept or reject babysitting jobs offered by FCC; FCC paid Nikki by the job; and the parties' intent that Nikki was an independent contractor is manifested by the fact that Nikki filled out a Form W-9 rather than a Form W-4, and there was no withholding. While a few of the factors lean toward employee status, those factors are less significant and do not outweigh the other factors.

On this thin record, FCC and the Munseys have not sustained their burden to show that Nikki was an employee. When considered as a whole, the evidence

supports the trial court's conclusion that Nikki was an independent contractor. Thus, we hold that the trial did not err when it denied their motion to dismiss for lack of subject matter jurisdiction.

[28] Affirmed.

Robb, J., and Altice, J., concur.